1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| MARGARITA LLAMAS, | )  1:09-cv-1503 GSA |
| | ) |
| | ) |
| | )  ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | )  SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

11
12
13
14
15
16
17
18
19

## **BACKGROUND**

20

       Plaintiff Margarita Llamas ("Plaintiff") seeks judicial review of a final decision of the

21

Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

22

supplemental security income under Title XVI of the Social Security Act.  The matter is currently

23

before the Court on the parties' briefs, which were submitted, without oral argument, to the

24

Honorable Gary S. Austin, United States Magistrate Judge.[1]

25

///

26

///

27

28

_____

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Doc. 9 & 10.)

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff protectively filed an application for supplemental security income on November 13, 2006, alleging disability beginning July 18, 2006, as the result sprains, strains and muscle disorders in her lower back, knee, neck and shoulders.  (AR 123-124).  Her application was denied initially and on reconsideration, and subsequently Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 129-132,137-141, 143).  ALJ Michael J. Haubner held a hearing on October 2, 2008, and issued an order denying benefits on December 6, 2008.  (AR 14-20).  On June 26 2009, the Appeals Council denied review.  (AR 1-5).

## Hearing Testimony

On October 2, 2008, in Fresno, California, ALJ Haubner held a disability hearing during which Plaintiff, represented by attorney Melissa Proudian, appeared and testified with the assistance of an interpreter, Jacqueline Flores.  (AR 23-41).  Vocational Expert ("VE") Judith Najarian[3] also testified.  (AR 41-51).

At the time of the hearing, Plaintiff was a forty-three year-old female living in Fresno, California with her twenty-six year-old son, daughter-in-law, and their two children, ages three and eight.  (AR 27-28).  She completed the twelfth grade in Mexico.  (AR 27, 39).  Both her son and daughter-in-law work outside the home.  (AR 28).

Currently, Plaintiff's daily activities include watching television for about an hour, reading occasionally, and conversing with her grandchildren for about an hour a day.  (AR 34). She is able to brush her teeth, comb her hair, bathe herself, prepare simple meals twice a day and wash the soiled dishes used during those simple meals.  (AR 31).  She also talks on the telephone once a week, attends church services every two months, and visits people outside the home every three months.  (AR 32-33).  Plaintiff has no hobbies, does not make her own bed, change her own linens, take out the trash, clean the kitchen or bathrooms, do yard work, sweep, vacuum,

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] The hearing transcript reflects an incorrect spelling of the Vocational Expert's name.  Her name is Ms. Najarian, not "Nigerian."  (Doc. 11-3 at 42, AR 14).

1  mop floors, wash windows, or do the laundry.  (AR 30-33).  She does not have a driver's license,

2  and must depend on others for rides.  (AR 29).  Plaintiff's last shopping trip was about a year

3  ago, as her daughter-in-law or sister currently do the household shopping.  (AR 33).  Plaintiff

4  does not care for her grandchildren while their parents are at work, nor does she help her eight-

5  year-old grandson with his homework or attend any of her grandchildren's school functions.  (AR

6  29, 34).

7      Plaintiff's impairments include neck and low back problems, a history of fibromyalgia

8  that has gotten progressively worse over the past three years, as well as mild depression –

9  although she has not been evaluated or treated by either a psychologist or psychiatrist.  (AR 36-

10 37, 39).  When asked to compare the severity of her symptoms to how she felt at the hearing of

11 February 2, 2006, Plaintiff said that she feels worse, and can sit, stand, and walk for a shorter

12 period of time.  (AR 40).  Her current medications include Tramadol, taken four times a day, and

13 Fluoxetine, taken three times a day.  (AR 35, 39).  She was also recently prescribed Ambien.

14 (AR 35, 39).  Plaintiff's medications cause dizziness and drowsiness, although when she

15 informed her doctors about these side effects her medications were not altered, and she was

16 instructed to simply rest.  (AR 35).

17     Plaintiff explained that she is currently capable of: lifting/carrying ten pounds;

18 sitting/standing for ten minutes; walking for ten minutes before requiring rest; and paying

19 attention or concentrating for fifteen minutes.  (AR 37-38).  She states that her impairments and

20 the resulting fatigue or pain require her to lie down an average of six and one-half hours per day.

21 (AR 38).

22     The ALJ also elicited testimony from VE Najarian, who testified that Plaintiff was

23 previously employed as a tortilla packer, which the VE classified pursuant to the Dictionary of

24 Occupational Titles ("DOT") as 2, medium exertional level and unskilled.  (AR 42).  Plaintiff

25 also worked previously as a turkey de-beaker, which the VE classified as DOT 3, light exertional

26 level and semi-skilled.  (AR 42).  Neither of these two positions imparted transferable work skills

27 to Plaintiff.  (AR 42-43).

28

The VE was then presented with several hypothetical questions posed by the ALJ.  (AR 43-51).  First, the VE was asked to assume a hypothetical worker of Plaintiff's age, education, experience, and background, who could lift and/or carry fifty pounds occasionally, twenty-five pounds frequently, and stand and/or walk for about six hours out of eight.  Moreover, the hypothetical worker would be unable to stoop, bend, engage in overhead activity that required hyperextension of the neck, as well as be unable to keep her neck in one position for periods longer than twenty minutes.  (AR 43-44).  The VE determined that this hypothetical worker could perform Plaintiff's past relevant work as either a tortilla packer or poultry de-beaker.  (AR 44-45).  Additionally, the person would be able to work as a production helper, cleaner II, and a production worker (e.g., box bender).  (AR 47-50).  Each position is medium, unskilled employment with 25,000, 25,244, and 12,974 jobs available in California[4] respectively.  (AR 19).

The functional limitations used in the second hypothetical included: the ability to lift and/or carry fifty pounds occasionally, twenty-five pounds frequently, stand and/or walk for about six hours out of eight, unlimited ability to push and pull, occasional ability to stoop, the ability to frequently climb, balance, kneel, crouch and crawl, and the ability to occasionally reach overhead.  (AR 50).  The VE determined that this hypothetical worker would be able to perform all the jobs identified in hypothetical one.  (AR 51).

Finally, in the third hypothetical, which was based on Plaintiff's testimony, the VE was asked to consider functional limitations that included: the ability to lift and carry ten pounds, sit, stand and/or walk for ten minutes at a time, concentrate for fifteen-minute increments, and the requirement to lie down and rest for six and one-half hours out of eight.  (AR 51).  Given these limitations, the VE indicated that no work was available for such a worker.  (AR 51).

**Medical Record**

The entire medical record was reviewed by the Court.  Those records relevant to the issues on appeal are summarized below.  Otherwise, the medical evidence will be referenced as necessary in this Court's decision.

---

[4] To determine the approximate number of position available nationwide, the ALJ multiplied the number of position available in California by nine.  (AR 47).

1

### *Sequoia Community Health Center*

2    The medical records from this facility consist of two pages of progress notes spanning

3  from September 12, 2005, through April 17, 2006.  (AR 217-218).  The only relevant entry is

4  November 10, 2005, wherein it is noted that Plaintiff was "not seen due to patient wanting to be

5  seen for back and neck pain due to [motor vehicle accident]."  (AR 217).

6    ### *Community Medical Centers*

7    The medical records from this facility consist primarily of physician progress notes, but

8  also include a single x-ray of Plaintiff's thoracic spine and a hematology report.  (AR 226-245,

9  248-255).

10    On February 7, 2006, the physician's notes indicate that Plaintiff suffered a slip and fall

11  in 2000 and a motor vehicle accident in 2001, and sought treatment as a result, primarily for her

12  back pain.  (AR 225).  Her complaints included "pain all the time . . . pain better with lying [or]

13  sitting . . . cramping to hands and legs [no] numbness . . . has to walk slow, difficulty with

14  combing hair . . . has to use arm of chair to stand."  The physician's examination revealed tender

15  points spanning from Plaintiff's cervical spine to her lumbar spine, and pain with straight leg

16  raises.  (AR 225).  Other than what is noted above, the physician's notes do not equate Plaintiff's

17  pain to any workplace functional limitations.  The treatment plan included a six-week course of

18  medications, and a follow-up appointment in one month.  (AR 244).

19    On February 8, 2006, an x-ray of Plaintiff's lumbar and thoracic spine was completed.

20  (AR 242-243).  The lumbar spine x-ray revealed preserved lumbar lordosis, well aligned

21  vertebrae, intact vertebral bodies and neural arches, no osteolytic or osteoblastic lesions, and

22  normal appearance in the discs, facet joints, and sacroiliac joints.  (AR 243).  The thoracic spine

23  x-ray revealed normal curvature of the thoracic spine, intact vertebral bodies and neural arches,

24  no osteolytic or osteoblastic lesions, normal appearance in the discs, and the paraspinal soft

25  tissues were unremarkable.  (AR 242).  The physician's interpretation of the lumbar and thoracic

26  spines concluded that "no significant abnormalities [were] noted."  (AR 242-243).

27

28

On March 9, 2006, Plaintiff denied any changes in her symptoms, and the physician's treatment plan recommended continuing her medications, but modified the previous treatment plan by also including a recommendation for physical therapy. (AR 239).

On June 6, 2006, during a follow-up appointment for her complaints of fibromyalgia and back pain, Plaintiff told the treating physicians that she was feeling better, which she attributed to physical therapy, but she also requested additional pain medications. (AR 238). She denied being depressed. (AR 238). Upon examination, the physician identified more than fourteen musculoskeletal tender points. (AR 238).

On June 27, 2006, the physician noted "[Plaintiff's] back pain is slightly better. [Plaintiff] denies any new complaints . . . still having . . . chronic body aches, but improved overall. [Plaintiff] denies being depressed, sad, etc." (AR 237). As before, the physician identified more than fourteen musculoskeletal tender points. (AR 237). However, the physician opined that Plaintiff's fibromyalgia was "stable [to] slightly improved." (AR 237).

On September 1, 2006, Plaintiff reported a current pain level of seven on a scale from one to ten that was radiating to her legs. (AR 232). She also reported that her physical therapy "has not been helping." (AR 232). The physician's physical examination revealed mild to moderate pain all over Plaintiff's spine, and tenderness all over her body. (AR 232).

On January 4, 2007, physical examination revealed multiple tender points all over Plaintiff's spine, arms, and legs. (AR 227). The physician opined that fibromyalgia was a "high possibility." (AR 227). During a follow-up appointment on March 16, 2007, the physician noted in his physical examination "[positive for] tenderness on lower back (para vertebral)." (AR 226).

On June 1, 2007, Plaintiff reported continuing pain, rated eight out of ten, all over her body. (AR 255). On September 6, 2007, Plaintiff again reported pain in her lower back, rated seven out of ten, and the physician's physical examination revealed point tenderness along the L1-L5 regions as well as a positive straight leg raise test. (AR 252).

On January 10, 2008, Plaintiff claimed that her pain was worsening. (AR 251). Plaintiff stated that she "basically . . . has pain all over the body with point tenderness in all [extremities] and the back from L1-L5." (AR 251). Plaintiff also informed her doctor that she was "doing

6

1   regular activities and has regular diet." (AR 251).  As part of the physical examination, the

2   physician noted "ROM normal but very painful . . . straight leg test [negative] but very painful."

3   (AR 251).  The physician opined that Plaintiff's fibromyalgia was uncontrolled with Tramadol

4   and Baclofen, and added Lyrica to Plaintiff's prescriptions.  (AR 251).

5        On May 15, 2008, Plaintiff's fibromyalgia was again described as "uncontrolled with

6   current [medications]." (AR 249).  She complained of pain over her entire body, but she had

7   taken it upon herself to limit her medications to only Tramadol because the Lyrica was causing

8   dizziness. (AR 249).  Plaintiff also reported that her depression was "much better" and that her

9   sleep, ability to concentrate, and energy had improved. (AR 249).  Her physical examination

10  revealed "point tenderness all over including lower back, upper back, and shoulders." (AR 249).

11       ***J.V. Glaser M.D.***

12       On February 21, 2007, Dr. Glaser, a state agency examining physician, evaluated

13  Plaintiff's impairments as part of State Agency medical evaluation. (AR 224-225).  As part of

14  his case analysis, Dr. Glaser examined the treating physician reports from Sequoia Community

15  Health Center reflecting treatment received up to and including January 16, 2007, and from the

16  University Medical Center  reflecting treatment received up to and including January 3, 2007, as

17  well as the ALJ decision of July 17, 2006 (AR 224).  Dr. Glaser identified the following

18  significant objective findings included in these reports: February 2006 x-rays of Plaintiff's

19  lumbar and thoracic spine revealed no significant abnormalities, in March 2006 Plaintiff

20  complained of back pain, but upon examination the treating physician described Plaintiff's

21  condition as "otherwise [normal]," during a examination conducted in June 2006, the treating

22  physician identified 14 tender points on Plaintiff's body, but stated that Plaintiff's condition was

23  "otherwise [normal]," and during a September 2006 examination, the treating physician

24  documented a history of fibromyalgia, but also found Plaintiff to be awake and oriented to

25  person, place, and time, displaying normal edema, normal neurological functioning, despite her

26  complaints of pain over her spine and tenderness over her entire body.  (AR 224).  Dr. Glaser

27  also commented on Plaintiff's credibility, stating "ALJ found [Plaintiff] to be exaggerating

28

[symptoms]. [Plaintiff] alleged same functional limits currently that she alleged at ALJ." (AR 225) (all caps removed). Dr. Glaser concluded his case analysis by recommending:

> The only additional allegation that [Plaintiff] has that is different from her ALJ decision is that now she has added knee pain. However this was addressed at [sic] the ALJ in that [Plaintiff complained of] leg pain during that time period as well. Interestingly [Plaintiff] did not allege fibromyalgia[.] However this [diagnosis] is carried in her [treating physician's medical electronic record[5]]. Other than [tender points], which ALJ has also included in his decision, [Plaintiff] has nothing else to limit her in [regards to] fibromyalgia as [Plaintiff] denies any [significant cognitive] dysfunction or depression & her severe loss of function has not been found to be a credible report. There would be no material changes since the recent 7/06 ALJ decision[.] Therefore that decision is adopted & [Plaintiff] will be given medium RFC [with] some posturals. Same med/voc rule applies 202.20. M.C. response: agree adopting ALJ decision 7/06.

(AR 225).

Dr. Glaser also completed a physical residual functional capacity assessment. (AR 219-223). The assessment identifies cervical spine strain as the primary diagnosis, low blood pressure as a secondary diagnosis, and fibromyalgia as an "other alleged impairment." (AR 219). Dr. Glaser stated that Plaintiff's exertional limitations included: the ability to lift and/or carry fifty pounds occasionally, twenty-five pounds frequently, stand and/or walk for about six hours out of eight, sit for about six hours out of eight, and an unlimited ability to push and/or pull[6]. (AR 220). Dr. Glaser also identified postural limitations that included the ability to frequently climb, balance, kneel, crouch, and crawl, as well as the occasional ability to stoop. He based this opinion on the July 17, 2006, ALJ decision and the exertional limitations identified above. (AR 220). Dr. Glaser also identified reaching in all directions, including overhead, as a manipulative limitation based on Plaintiff's ability to occasionally reach overhead. (AR 221). With regard to Plaintiff's alleged symptoms, the assessment asked Dr. Glaser to comment on whether their severity and duration were disproportionate to the expected levels given the medically determinable impairments. (AR 222). Dr. Glaser responded, "[Plaintiff] has a credibility issue

---

[5] The record contains the abbreviation "TP MER." (AR 225). It is the understanding of this Court that the abbreviation "TP" stands for "treating physician" and "MER" represents "medical electronic record."

[6] Dr. Glaser's RFC assessment cites "ALJ DECISION" as the basis for its conclusions. (AR 220). The ALJ decision referred to is dated July 17, 2006, and is contained within the record currently under appeal. (AR 101-118).

1  discussed in the ALJ decision, [Plaintiff] seems to exaggerate her [symptoms]."  (AR 223) (all
2  caps removed).

3      ***Brian Ginsburg, M.D.***

4      On June 7, 2007, Dr. Ginsburg evaluated Plaintiff's impairments as part of State Agency
5  medical evaluation.  (AR 246-247).  As part of his case analysis, Dr. Ginsburg examined the
6  same medical reports that were examined in the prior analysis by Dr. Glaser.  (AR 246).  Dr.
7  Ginsburg agreed with Dr. Glaser, and accordingly recommended affirming the adoption of the
8  previous ALJ decision that included a medium residual function capacity with postural and
9  manipulative limitations.  (AR 246).

10                          **SCOPE OF REVIEW**

11      Congress has provided a limited scope of judicial review of the Commissioner's decision
12  to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,
13  the Court must determine whether the decision of the Commissioner is supported by substantial
14  evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla,"
15  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*
16  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a
17  reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at
18  401.  The record as a whole must be considered, weighing both the evidence that supports and
19  the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,
20  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must
21  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).
22  This Court must uphold the Commissioner's determination that the claimant is not disabled if the
23  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by
24  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th
25  Cir. 1987).   Where the evidence is susceptible to more than one rational interpretation, it is the
26  ALJ's conclusion that must be upheld.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).
27  ///
28  ///

1

## <u>REVIEW</u>

2          In order to qualify for benefits, a claimant must establish that he is unable to engage in

3   substantial gainful activity due to a medically determinable physical or mental impairment which

4   has lasted or can be expected to last for a continuous period of not less than twelve months.  42

5   U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

6   such severity that he is not only unable to do her previous work, but cannot, considering his age,

7   education, and work experience, engage in any other kind of substantial gainful work which

8   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

9   The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

10  Cir. 1990).

11         In an effort to achieve uniformity of decisions, the Commissioner has promulgated

12  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

13  C.F.R. §§ 404.1520(a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ

14  found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

15  her disability; (2) has an impairment or a combination of impairments that is considered "severe"

16  based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an

17  impairment or combination of impairments which meets or equals one of the impairments set

18  forth in  20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to perform her past relevant

19  work; and (5) retains the residual functional capacity ("RFC") to perform other jobs that exist in

20  significant numbers in the national economy.  (AR 14-20, 24-36).

21         Here, Plaintiff argues that the findings are not supported by substantial evidence and are

22  not free of legal error because (1) the ALJ failed to properly assess Plaintiff's fibromyalgia, and

23  (2) the ALJ's credibility determination was erroneous.  (Doc. 14 at 5-12).  In turn, Defendant

24  responds by arguing that the ALJ's credibility determination is supported by clear and convincing

25  evidence.  (Doc. 16 at 4-7.)

26  ///

27  ///

28  ///

1

## DISCUSSION

2

### A.    *Treating Physician Opinion*

3      As stated above, Plaintiff contends that the ALJ failed to properly assess her

4  fibromyalgia.  (Doc. 14 at 3-6).  She supports her contention by citing to both subjective and

5  objective findings included in the records from her treating physicians at Community Medical

6  Centers, and argues that these findings are inconsistent with the ALJ's disability determination.

7  (Doc. 14 at 3-6).  Stated differently, Plaintiff is essentially arguing  that the ALJ failed to accord

8  proper weight to the evidence of treating physicians and/or that his rejection of this evidence was

9  improper.

10      Generally, the opinions of treating doctors should be given more weight than the opinions

11 of doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998);

12 *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Where the treating doctor's opinion is not

13 contradicted by another doctor, it may be rejected only for "clear and convincing" reasons

14 supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Stated differently, a

15 treating physician's opinion must be given controlling weight if it is well-supported and not

16 inconsistent with the other substantial evidence in the record.  *Lingenfelter v. Astrue*, 504 F.3d

17 1028 (9th Cir. 2007).  However, if the treating doctor's opinion is contradicted by another doctor,

18 the ALJ may reject the opinion of a treating physician by providing "specific and legitimate

19 reasons" supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830 (quoting *Murray*

20 *v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  This can be done by setting out a detailed and

21 thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof,

22 and making findings.  *Magallanes  v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  In sum, the

23 ALJ must do more than offer bare conclusions; he must explicitly support his interpretation of

24 the medical evidence by explicitly citing sufficient reasons which explain why the evidence

25 provided by the treating physician is not entitled to the increased evidentiary weight typically

26 accorded to it, as well as identify substantial evidence supporting the contradictory interpretation.

27 *Embry v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

28

Despite their potential weight, evidence provided by treating physicians is not above reproach. For example, treating physician opinions that fail to equate objective findings to specific functional limitations precluding work activity are not entitled to deference. *Morgan v. Comm'r*, 169 F.3d 595, 601 (9th Cir. 1999). Also, where a treating source's opinion is based largely on the Plaintiff's own subjective description of his or her symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject the treating source's opinion. *Fair v. Bowen*, 885 F. 2d 597, 605 (9th Cir. 1989). Even if found to be less than controlling, however, the opinions of treating physicians may not be disregarded entirely.

If a treating physician's opinion is not given controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Title 20 of the Code of Federal Regulations section 404.1527(d)(2) to consider the factors listed in section 404.1527(d)(2) through (6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6).

In the present case, the ALJ was presented with evidence from Plaintiff's treating physicians which consisted primarily of progress notes detailing specific medical visits, the impetus of which ranged from pap tests to follow-up visits for fibromyalgia. (AR 217-218, 226-245, 248-255). These progress notes document Plaintiff's subjective complaints, the treating physician's objective findings, diagnosis, and the planned course of treatment. (AR 217-218, 226-245, 248-255). The records reflect both objective and subjective symptoms related to Plaintiff's fibromyalgia, such as her reports of pain levels and the treating physician's identification of multiple tender points. (AR 217, 226-227, 232-237, 242-244, 249-255). However, the progress notes, apparently being created by the treating physician during or immediately after Plaintiff's medical appointment, are heavily reliant on Plaintiff's subjective

1  complaints.  (AR 217-218, 226-245, 248-255).  The medical records document Plaintiff's motor

2  examination as "5/5" in all extremities, and her strength as "5/5," in February of 2006, and

3  describe her fibromyalgia as "stable" and "slightly improved" during June of 2006, yet also

4  document "worsening pain" in January 2008, and describe Plaintiff's fibromyalgia as

5  "uncontrolled" as late as May 2008.  (AR 227-228, 249, 251).   Furthermore, the progress note of

6  January 10, 2008, documents Plaintiff engaging in "regular activities," yet also reflect a normal,

7  but painful, range of motion test and straight leg raise test.  (AR 251).  Finally, none of Plaintiff's

8  treating physicians equate any of Plaintiff's impairments to functional limitations.

9  　　　The ALJ was additionally presented with evidence from two examining physicians.  (AR

10  219-225, 246-247).  The initial evaluation conducted by Dr. Glaser in February 2007 considered

11  the majority of evidence from Plaintiff's treating physicians, but did not include those medical

12  records created after September 2006, which equates to the six most recent progress notes from

13  Community Regional Medical Centers.  (AR 224).  It should also be noted that those progress

14  notes not considered by Dr. Glaser reflect only minute variations in Plaintiff's reported pain

15  levels, ranging from seven to eight, when compared to the progress notes that were considered,

16  which documented pain levels ranging from seven to nine.   (AR 217-218, 226-245, 248-255).

17  The second evaluation dated June 2007, which adopted Dr. Glaser's opinion without change, did

18  not consider any additional evidence beyond that considered in the initial evaluation.  (AR 246).

19  Both of the examining physician evaluations provided an RFC assessment limiting Plaintiff to a

20  medium exertional level with some postural limitations.  (AR 225, 246).

21  　　　The records from the treating and examining physicians are conflicting to the extent that

22  Plaintiff's subjective complaints and the treating physician's objective findings of tender points

23  infer a more restrictive RFC than that provided by the examining physicians.  With this

24  conflicting medical evidence, the ALJ, having reached step five of his analysis, was required to

25  assess Plaintiff's RFC to determine if she could engage in other employment.  In so doing, the

26  ALJ stated:

27  　　　　　The sparse medical record establishes that the claimant receives routine
conservative care about every four months for complaints of chronic back pain
28  due to a fall in 2000 and a motor vehicle accident in 2001, along with a history of

1
2
3
4
5

fibromyalgia.  Lumbar spine x-ray and thoracic spine x-ray performed in February
2006 revealed no significant abnormalities.  On examination in June 2006 it was
noted her fibromyalgia was stable and had slightly improved.  However, on
examination in May 2008 the claimant complained of generalized pain all over
her body.  She had point tenderness in her lower back, upper back, and shoulders.
It was noted that her depression was much better with improved sleep,
concentration, and energy.  Treatment modalities consist of ongoing medical
management.

6   (AR 18) (internal citations omitted).  Also, while discussing the medical evidence as it pertained

7   to Plaintiff's credibility, the ALJ stated that the limiting effects resulting from Plaintiff's

8   fibromyalgia seemed "more volitional than based on the medical evidence discussed above. . . .

9   [W]hile she testified that her fibromyalgia has persistently gotten worse in the last 3 years, the

10  medical evidence showed it to be stable with even some slight improvement. . . . [T]he [Plaintiff]

11  has not generally received the type of treatment one would expect for a totally disabled

12  individual."  (AR 18-19).   Moreover, the ALJ, apparently well-aware of the need to explicitly

13  address his favoring the examining physicians' opinions over that of Plaintiff's treating

14  physicians, stated "I also note no treating physician gave a residual functional capacity, and thus

15  it appears the current State Agency opinion is consistent with the overall evidence."  (AR 19)

16  (internal citations omitted).

17       The above demonstrates that the ALJ gave greater weight to the opinions of state agency

18  physicians because he believed they were consistent with the overall medical evidence.  (AR 19).

19  The ALJ's decision to forgo the findings and opinions of Plaintiff's treating physicians begins by

20  citing specific facts documented in the records of the treating physicians, such as Plaintiff's

21  subjective complaints and the treating physicians' objective findings.  (AR 18).  Next, the ALJ

22  considered the remainder of the medical record, which included the Plaintiff's testimony

23  regarding her subjective complaints and daily activities, his observations, and the opinions

24  provided by the state agency physicians.  (AR 18-19).  The juxtaposition of the evidence

25  demonstrates the ALJ attempting to resolve the apparent conflict by citing specific objective

26  findings documented by Plaintiff's treating physicians, and contrasting those findings with other

27  objective findings which do not substantiate Plaintiff's claim.  (AR 18-19).  Moreover, the ALJ's

28  analysis makes clear that the records from Plaintiff's treating physicians were not entitled to the

greater weight typically accorded to such evidence because they were either inconsistent with the

other medical evidence, relied primarily on Plaintiff's less than credible subjective complaints

(see analysis  below), or reflected only "routine conservative care" not typical of treatment

generally received for such complaints.  (AR 18-19).  These were all proper factors for him to

consider.  *See Morgan*, 169 F.3d at 601 (treating physician opinions that fail to equate objective

findings to specific functional limitations precluding work activity are not entitled to deference);

*Fair*, 885 F.2d at 605 (treating source's opinion is based largely on the Plaintiff's own subjective

description of his or her symptoms may be rejected when ALJ has found the Plaintiff lacking in

credibility as to those subjective symptoms); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.

1999) (subjective pain complaints properly discredited where claimant complained of intense

pain but only received minimal and "conservative" treatment); *Tommasetti v. Astrue*, 533 F.3d

1035, 1039 (9th Cir. 2008) (ALJ properly inferred that the claimant's pain was not as all-

disabling as he reported in light of fact that the he did not seek an aggressive treatment program).

On balance, in the face of conflicting medical evidence, this Court finds the ALJ's rejection of

Plaintiff's treating physicians' opinions and findings to have been supported by specific and

legitimate reasons sufficient to constitute substantial evidence.  Moreover, the Court finds the

ALJ's decision to be a rational interpretation of the evidence given the conflicting and limited

medical record.  *Burch v. Barnhart*, 400 F.3d 676, 680-681 (9th Cir. 2005) (Court must uphold

the ALJ's decision where the evidence is susceptible to more than one rational interpretation).

Plaintiff contends that the ALJ's decision reflects a misunderstanding of fibromyalgia.

(Doc. 14 at 3-10).   Her argument, unfortunately, misses the mark.  The Ninth Circuit has

recognized that fibromyalgia's cause is unknown, that there is no cure, and it is diagnosed

"entirely on the basis of patients' reports of pain and other symptoms."  *Benecke v. Barnhart*, 379

F.3d 587, 590 (9th Cir. 2004).  Additionally, the Ninth Circuit has acknowledged that

fibromyalgia's symptoms are entirely subjective and that there are no laboratory tests for its

presence or severity.  *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (quoting *Sarchet v.

Chater*, 78 F.3d 305, 306 (7th Cir.1996)).  Courts have found it error for an ALJ to discount a

treating physician's opinion as to resulting limitations due to a lack of objective evidence for

1   fibromyalgia. *Benecke*, 379 F.3d at 594 & n. 3; *see also Galvan v. Astrue*, 2010 WL 529440, \*10

2   (E.D. Cal. Feb. 9, 2010) (ALJ's discounting of physicians' opinions simply because the doctors

3   failed to checkoff or delineate the 18 trigger points identified by the American College of

4   Rheumatology did not satisfy the requirement of citing specific and legitimate reasons supported

5   by substantial evidence in the record); *Guevara v. Astrue*, 2009 WL 650736, \*6 (C.D. Cal. Mar.

6   11, 2009) (noting that due to the nature of fibromyalgia, the absence of laboratory or clinical

7   findings is not a legitimate basis for rejecting a treating physician opinion); *but see Yunt v.*

8   *Comm'r of Soc. Sec.*, 2008 WL 596226, \*2 (E.D. Cal. Mar. 3, 2008) (concluding it was

9   reasonable for ALJ to require treating physician's assessment of claimant with fibromyalgia to be

10  supported by objective findings, such as grip strength and range-of-motion test data).

11          Plaintiff attempts to draw support for her position by citing case law that documents

12  administrative law judges failing to recognize fibromyalgia.  (Doc. 14 at 6.)  However, the cases

13  cited are clearly distinguishable from the present one as they included treating physician records

14  extensively documenting objective findings and treatment consistent with a claim of

15  fibromyalgia, as well as providing an RFC opinion.

16          In *Green-Younger v. Barnhart*, 335 F.3d 99 (2d Cir. 2003), the claimant's medical record

17  documented a fourteen-year span of treatment, including treatment received from no less than

18  three specialists with each concurring with the treating physician's diagnosis of fibromyalgia. *Id*.

19  at 101-105.  The claimant's treatment included a long course of anti-inflammatory medications

20  (eventually abandoned after found to be ineffective), epidural and steroid trigger point injections

21  (also abandoned because they only provided short-term relief), four MRIs which documented

22  disc degeneration and bulging discs, two electromyography tests (the later showed evidence of

23  nerve entrapment), as well as diagnoses of depression and paresthesias. *Id.*  Moreover, the

24  treating physician opined functional limitations resulting from claimant's fibromyalgia, such as a

25  markedly limited ability to function at a normal level, inability to sit or stand continuously for

26  more than sixty minutes without rest, or for more than four cumulative hours per day, and that it

27  was difficult to sit for more than thirty minutes at a time. *Id*. at 107.

28

1    In *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007), the medical records

2    documented a nine-year span of treatment, including treatment from three specialists and six

3    reports from various treating physicians opining RFC limitations.  *Id.* at 237-240.  The claimant's

4    course of treatment included visits to her primary treating physician nearly every six weeks since

5    the onset of her impairment, steroid injections and injections of lidocaine and marcaine (neither

6    providing more than temporary relief), diagnoses of depression and arthalgia, objective findings

7    of her inability to grasp objects, swollen joints, tenderness to palpation, and decreased range of

8    motion, as well as laboratory results indicating elevated sedimentation rates.  *Id.* at 237-240.  In

9    ruling that the ALJ had failed to accord sufficient weight to the opinions of claimant's treating

10   physicians, the *Rogers* court relied on the fact that there were "more than 500 pages"

11   documenting "continuous and frequent treatment" and suggested limitations with respect to the

12   claimant's "ability to perform basic functions."  *Id*. at 244.

13   In contrast to *Green* and *Rogers*, the medical records in this case, which Plaintiff

14   impliedly asserts should be sufficient to justify an RFC determination, consist of mere progress

15   notes from her treating physicians that span just over two years.  (AR 217-218, 226-245, 248-

16   255.)  Moreover, as more thoroughly discussed above, these records place a heavy reliance on

17   Plaintiff's subjective complaints and fail to provide any RFC opinion.  Furthermore, they

18   document what can rationally be interpreted as routine and conservative care, given the records

19   time span and treatment limited to medications and physical therapy.  (AR 217-218, 226-245,

20   248-255.)  Thus, the Court finds Plaintiff's citation to *Green* and *Rogers* lacking in merit as they

21   are clearly distinguishable from the present action.

22   Based on the above, the Court finds that the ALJ's RFC assessment is not based on a

23   misunderstanding of fibromyalgia, as Plaintiff contends.  Rather, the ALJ provided specific and

24   legitimate reasons to reject the opinions of Plaintiff's treating physicians, and instead relied on

25   the expertise of the examining physicians to deny the Plaintiff benefits.  Given the scant medical

26   record, the ALJ's interpretation of the evidence was rational.   *Burch*, 400 F.3d at 680-681.

27   ///

28   ///

**B.** *Credibility Analysis*

Plaintiff also contends that the ALJ's credibility determination fails to consider her testimony in light of the entire record. (AR 6). Plaintiff supports her argument by citing to perceived inconsistencies between the ALJ's ruling and the medical record evidence from Community Medical Centers, Plaintiff's past work history, her daily activities, and the ALJ's observations at the hearing. (Doc. 14 at 6-9). Defendant responds that "the ALJ provided several clear and convincing reasons for rejecting [Plaintiff's] testimony." (Doc. 16 at 4-7).

A two step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight"). However, review of the ALJ's credibility determination is limited, and only an irrational determination will be disturbed. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, this Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation). Furthermore, even where an ALJ's credibility decision may include an improper basis, it may be upheld on other bases. *See eg., Batson v. Barnhart*, 359 F.3d 1190, 1197 (9th Cir. 2004).

18

As stated above, the first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that Plaintiff's "history of fibromyalgia and discogenic disorder of the cervical and lumbar spine" were severe impairments.  (AR 16).  When making his finding as to Plaintiff's RFC, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment."  (AR 18).  This finding satisfied step one of the credibility analysis.  *Smolen*, 80 F.3d at 1281-1282.

In the absence of a finding that a claimant in malingering, an ALJ is required to provide clear and convincing reasons for rejecting Plaintiff's testimony.  *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended).  When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7.  Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 345-346.

Substantial evidence supporting an ALJ's rejection of a claimant's subjective complaints concerning the severity of symptoms can take many forms.  Influential factors may include: the claimant's reputation for truthfulness, prior inconsistent statements concerning symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *see also* SSR 88-13.

1    The ALJ may also draw reasonable inferences from the evidence.  *Sample v. Schweiker*, 694 F.2d

2    639, 642 (9th Cir. 1982).

3          In this case, the ALJ accurately summarized the Plaintiff's hearing testimony as follows:

4                The claimant testified as to her work history, medical condition, and
           current activities of daily living.  She testified that she has not worked since July

5          2006 and has not looked for work since that date.  She lives with her son,
           daughter-in-law, and two grandchildren ages 3 and 8.  Her son and daughter-in-

6          law both work and the 8 year old is in school and the 3 year old stays with her
           sister.  The claimant testified that she has neck and back problems and her

7          fibromyalgia has gotten worse over the last 3 years and she experiences more
           pain.  Allegedly she can only lift and carry 10 pounds, and stand, walk and sit for

8          10 minutes each, can only concentrate for 15 minutes, and has to lie down 6-1/2
           hours during the day.  She stated that the medications make her dizzy and sleepy.

9          Besides sleeping most of the day she is able to take care of her personal needs,
           prepare simple meals twice a day, goes to church every two months, watches

10         television 1 hour a day, talks on the phone once a week, reads daily, talks to the
           grandchildren 1 hour a day, and visits people outside the home every 3 months.

11

12   (AR 18.)

13         The ALJ made the following findings to support his credibility decision:

14               Regarding credibility I note that x-rays of the cervical and thoracic spine
           showed no abnormalities.  Also, the claimant has a very poor work history with

15         only 4 full substantial gainful activity years in the past 15 years and only 7 full
           substantial gainful activity years in her lifetime.  The claimant testified that she

16         does all her own personal care needs, but other than dishes and simple meal
           preparation twice a day, denies all chores.  This seems to be more volitional than

17         based on the medical evidence discussed above.  Further diminishing the
           claimant's credibility, while she testified that her fibromyalgia has persistently

18         gotten worse in the last 3 years, the medical evidence showed it to be stable, with
           even some slight improvement.  Additionally, the claimant seemed to exaggerate.

19         For example, she testified that she could only concentrate for 15 minutes
           maximum, yet paid attention and responded appropriately throughout the entire 50

20         minute hearing.  Furthermore, the claimant has not generally received the type of
           treatment one would expect for a totally disabled individual.

21

22   (AR 18-19) (internal citations omitted).

23         The above demonstrates that the ALJ's partial rejection of Plaintiff's testimony regarding

24   her limitations is based on articulated clear and convincing reasons supported by specific facts in

25   the record that establish an objective basis for his finding.  *Smolen*, 80 F.3d at 1283-1284; *Lester*,

26   81 F.3d at 834; *Dodrill*, 12 F.3d at 917.  Specifically, the ALJ indicated that it was Plaintiff's

27   "routine [and] conservative"course of treatment, her ability to do "all her own personal care

28   needs," the inconsistency between the objective medical evidence and Plaintiff's subjective

1    complaints, the Plaintiff's poor work history, her ability to engage in certain daily activities, and

2    ability to concentrate during the hearing which led to the ALJ partially discrediting Plaintiff's

3    testimony. (AR 18). Given the limited medical record establishing Plaintiff's fibromyalgia and

4    the evidence cited by the ALJ which contradicts Plaintiff's pain testimony, this Court is bound to

5    uphold the ALJ's credibility determination as it is a rational interpretation of the evidence.

6    *Burch*, 400 F.3d at 680-81.

7         Plaintiff argues that the medical record supports her testimony that her pain has gotten

8    worse over the past few years. (Doc. 14 at 3-6). Contrary to her belief, the record does not

9    support her contention. Plaintiff attempts to draw support for her interpretation of the medical

10   evidence by selective citation of subjective complaints and objective findings included in the

11   medical records from Community Medical Center. (Doc. 14 at 3-6). However, as stated above,

12   the records from this entity consist primarily of progress notes reflecting a routine conservative

13   course of treatment. (AR 226-245, 248-255). *See Meanel*, 172 F. 3d at 1113 (subjective pain

14   complaints properly discredited where claimant complained of intense pain but only received

15   minimal and "conservative" treatment); *Tommasetti*, 533 F.3d at 1039 (ALJ properly inferred

16   that the claimant's pain was not as all-disabling as he reported in light of fact that the he did not

17   seek an aggressive treatment program). Moreover, while the subjective complaints and objective

18   findings cited by Plaintiff are accurate, the records cited by Plaintiff are ambiguous at best as

19   they fail to equate any of Plaintiff's symptoms to functional impairments. *See Morgan*, 169 F.3d

20   at 601 (treating physician opinions that fail to equate objective findings to specific functional

21   limitations precluding work activity are not entitled to deference). Furthermore, despite the

22   debilitating effects of Plaintiff's fibromyalgia, Plaintiff testified that she continues to do all of her

23   personal care needs, including preparing simple meals twice daily and doing dishes, and other

24   daily activities. (AR 18). *See Fair*, 885 F.2d at 603 (ALJ may look to daily living activities as

25   part of the credibility analysis). As the above demonstrates, the ALJ considered appropriate

26   factors in conducting his credibility evaluation.

27        In sum, the ALJ was presented with limited medical records displaying only routine and

28   conservative care, which did not include an RFC assessment, opinion or otherwise substantiate

1   Plaintiff's claimed level of functional limitation.  Moreover, Plaintiff testified that she was able

2   to take care of all her personal care needs, including washing dishes, preparing two simple meals

3   a day, reading daily, watching television for an hour daily, and conversing with her grandchildren

4   daily.  Yet, despite these daily abilities, Plaintiff claimed her fibromyalgia required her to lie

5   down for six and one-half hours every day, restricted her ability to lift and carry to about ten

6   pounds, as well as her ability to stand, walk, and sit to ten minutes at a time, and that she could

7   only concentrate for fifteen minutes at a time.  (AR 18).  Given the above, the Court finds that

8   the ALJ's credibility determination is supported by substantial evidence, free from legal error,

9   and constitutes a rational interpretation of the evidence; as such, the decision must be left

10  undisturbed.  *Burch*, 400 F.3d at 680-681.

11                                           **CONCLUSION**

12          Based on the foregoing, the Court finds that the ALJ's decision is supported by

13  substantial evidence in the record as a whole and is based on proper legal standards.

14  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

15  Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in

16  favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,

17  Maragarita Llamas.

18          IT IS SO ORDERED.

19  **Dated:**   __December 17, 2010__          _____/s/ **Gary S. Austin**_____
                                                UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28